# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE ESTUARDO MARIN,<br><br>    Petitioner,<br><br>    v.<br><br>TONYA ANDREWS,[1]<br><br>    Respondent. | Case No. 1:25-cv-01422-SAB-HC<br><br>ORDER GRANTING PRELIMINARY INJUNCTION[2]<br><br>(ECF No. 2) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 6, 9, 10.)

**I.**

**BACKGROUND**

Petitioner is a 35-year-old Guatemalan citizen who alleges he has resided continuously in the United States since 1989. (ECF No. 2-1 at 3.[3]) On July 6, 2001, Petitioner filed an application for lawful permanent residency with Immigration and Naturalization Services ("INS").[4] On

---

[1] Respondents contend that the "Court should dismiss all respondents other than the Warden of the Golden State Annex, Tonya Andrews." (ECF No. 11 at 1 n.1.) As noted by the Court during the November 13, 2025 hearing, given that the Golden State Annex is a privately owned and operated facility, it appears that at least some of the named government Respondents should not be dismissed. However, in the interest of expedience, the Court will defer determination of that issue to the merits phase.

[2] Upon agreement of the parties, (ECF No. 11 at 2; ECF No. 12 at 2), the Court converts Petitioner's motion for temporary restraining order into a motion for preliminary injunction. Respondents had notice, opportunity to respond, and the ability to be heard. There is no benefit in additional briefing, and the standard is the same. As such, given the nature of the relief granted by this order and so as to appropriately permit Respondents the ability to appeal should they choose to do so, the Court converts this to a motion for preliminary injunction. See Bennett v. Medtronic, Inc., 285 F.3d 801, 804 (9th Cir. 2002) ("Ordinarily, temporary restraining orders, in contrast to preliminary injunctions, are not appealable . . . .").

[3] Page numbers refer to ECF page numbers stamped at the top of the page.

[4] "In 2002, Congress passed the Homeland Security Act, Pub. L. No. 107-296, 116 Stat. 2135, which abolished INS and transferred most immigration functions to the newly formed DHS [Department of Homeland Security], which

1  November 1, 2002, INS denied Petitioner's application. On August 12, 2012, Petitioner was
2  arrested, and that same day, ICE took Petitioner into custody after referral from the Alameda
3  County Jail. (ECF No. 11-1 at 2.)

4  On August 16, 2012, Petitioner was served with a Notice to Appear and placed in
5  removal proceedings. Petitioner was released from custody on a $2,500 bond posted by his
6  mother. (ECF No. 1 at 7; ECF No. 1-1 at 26; ECF No. 2-1 at 3–4; ECF No. 11-1 at 2.) Petitioner
7  failed to appear for his scheduled hearing in immigration court after failing to receive notice of
8  the hearing, and on August 22, 2013, an immigration judge ("IJ") ordered Petitioner removed in
9  absentia. (ECF No. 2-1 at 4; ECF No. 11-1 at 2.)

10  On July 9, 2025, ICE officers apprehended Petitioner.[5] (ECF No. 11-1 at 2.) Petitioner
11  only learned of his removal order after his detention on July 9. (ECF No. 1-1 at 19.) That same
12  day, Petitioner's fiancée contacted counsel for legal representation for Petitioner, who was then
13  transferred to the Golden State Annex in McFarland, California. (ECF No. 1 at 7.) Counsel
14  attempted to contact Petitioner on July 9, 2025, but was unsuccessful, and could only make a
15  video appointment, the earliest of which was July 15, 2025. (Id. at 8.)

16  On July 10, 2025, counsel emailed the Department of Homeland Security ("DHS"),
17  notifying it of an impending motion to reopen and rescind the in absentia order of removal for
18  lack of notice under section 240(b)(5)(C) of the Immigration and Nationality Act ("INA"), 8
19  U.S.C. § 1229a(b)(5)(C), and 8 C.F.R. § 1003.23(b)(4)(ii). DHS was alerted of the automatic
20  stay that applies when such motions are filed. (ECF No. 1 at 8.) On July 11, 2025, Petitioner
21  filed a motion to reopen and rescind his in absentia order of removal. (ECF No. 1 at 8; ECF No.
22  11-1 at 2.) Petitioner's counsel informed DHS that the motion had been filed and provided them
23  with a copy of the cover page of the filed motion, which had been duly served. (ECF No. 1 at 8.)

24  On July 11, 2025, Petitioner spoke to his counsel and indicated that he was being
25  removed. Petitioner was advised to inform the immigration officials that a motion to reopen had

---

houses Immigration and Customs Enforcement ("ICE")." Flores v. Rosen, 984 F.3d 720, 728 (9th Cir. 2020) (citing 6 U.S.C. §§ 111, 251, 291).

[5] At the time of detention on July 9, 2025, Petitioner had no pending applications or motions before the immigration court or United States Citizenship and Immigration Services ("USCIS") and was subject to the August 22, 2013 final order of removal. (ECF No. 11-1 at 2.)

1  been filed and an automatic stay was in place. Nonetheless, Petitioner was transferred from the
2  Golden State Annex to an unknown location for his removal. Petitioner was incommunicado
3  from July 11, 2025, and his whereabouts were unknown by his counsel and Petitioner's family
4  until Petitioner called his fiancée on July 14, 2025 to inform her that he was in Guatemala.[6] (ECF
5  No. 1 at 8.)

6        On July 23, 2025, the immigration court granted Petitioner's motion to reopen and
7  rescinded his in absentia removal order. (ECF No. 14-1 at 2.) After a petition for habeas corpus
8  was filed before a different jurisdiction, Petitioner was returned to the United States on August
9  26, 2025. The previous petition for habeas corpus was dismissed as part of the agreement to
10 secure Petitioner's return to the United States. (ECF No. 1 at 8; ECF No. 11-1 at 2.) Upon
11 Petitioner's return, he was re-detained purportedly pursuant to 8 U.S.C. § 1225(b) and detained
12 at the Golden State Annex. (ECF No. 1 at 9; ECF No. 11-1 at 2–3.) On September 26, 2025,
13 Petitioner requested a bond hearing before an IJ, and on October 17, 2025, an IJ denied
14 Petitioner's request for a bond hearing, finding that the immigration court lacked jurisdiction.
15 (ECF No. 1 at 9; ECF No. 11-1 at 3.)

16       On October 24, 2025, Petitioner filed a petition for writ of habeas corpus and a motion
17 for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) In the petition, Petitioner raises the
18 following claims for relief: (1) the erroneous application of 8 U.S.C. § 1225(b)(2) to Petitioner
19 unlawfully mandates his continued detention and violates the Immigration and Nationality Act;
20 (2) Petitioner's re-detention after being released on bond in 2012 without a pre-deprivation
21 hearing violates his Fifth Amendment due process rights; and (3) detention of Petitioner without
22 a bond redetermination hearing to determine whether he is a flight risk or danger to others also
23 violates his right to due process. (ECF No. 1 at 14–16.) The motion for TRO raises only the issue
24 of the erroneous application of 8 U.S.C. § 1225(b)(2) to Petitioner. (ECF No. 2.) Respondent
25 filed an opposition, Petitioner filed a reply, and the parties filed supplemental briefs. (ECF Nos.
26 11, 12, 14, 16.) On November 13, 2025, the Court held a hearing on the motion.

---

[6] Respondents confirm that Petitioner was removed from the United States to Guatemala on July 14, 2025. (ECF No. 11-1 at 2.)

## II.

## DISCUSSION

In the motion for preliminary injunction, Petitioner asserts that his ongoing detention by Respondents under 8 U.S.C. § 1225(b)(2) and the denial of bond hearing before an immigration judge is unlawful and that 8 U.S.C. § 1226(a) governs his detention. Petitioner seeks either: (1) immediate release from custody and to enjoin Respondents from re-detaining Petitioner unless he is afforded a pre-deprivation hearing; or (2) an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven days.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 2 (2008) (citations omitted).

> Under the "sliding scale" variant of the *Winter* standard, "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied."

All. for the Wild Rockies v. Pena, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting Shell Offshore, Inc. v. Greenpeace, Inc., 709 F.3d 1281, 1291 (9th Cir. 2013)). "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter, 555 U.S. at 24 (citation omitted). An injunction may only be awarded upon a clear showing that the Petitioner is entitled to relief. Winter, 555 U.S. at 22 (citation omitted).

**A. Whether Petitioner Seeks Appropriate Preliminary Relief**

At the outset, the Court addresses Respondent's argument that Petitioner improperly seeks "an ultimate determination on the merits" when the "purpose of a preliminary injunction is to preserve the status quo between the parties pending a resolution of a case on the merits," relying on Senate of Cal. v. Mosbacher, 968 F.2d 974, 978 (9th Cir. 1992), and Keo v. Warden of Mesa Verde ICE Processing Center, No. 1:24-cv-00919-HBK, 2024 WL 3970514 (E.D. Cal. Aug. 28, 2024). (ECF No. 11 at 4.) Respondent contends that "Petitioner does not seek to maintain the status quo against irreparable injury pending a determination on the merits. Rather,

4

Petitioner requests the same relief he seeks on the merits, i.e., release from detention." (ECF No. 11 at 4.)

"The 'purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.'" Boardman v. Pac. Seafood Grp., 822 F.3d 1011, 1024 (9th Cir. 2016) (quoting Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1023 (9th Cir. 2009)). Respondent impliedly argues that the status quo ante litem is Petitioner's detention. However, the "status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy[.]'" GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 809 (9th Cir. 1963)).

"[S]everal district courts have recently concluded that releasing a re-detained noncitizen who had been on supervised release preserves rather than alters the status quo." Nguyen v. Scott, No. 2:25-CV-01398, 2025 WL 2419288, at *10 (W.D. Wash. Aug. 21, 2025) (collecting cases). Accordingly, the Court finds that Petitioner's request for release or an individualized bond hearing is not inappropriate. See, e.g., Castellon v. Kaiser, No. 1:25-cv-00968-JLT-EPG, 2025 WL 2373425, at *7 n.7 (E.D. Cal. Aug. 14, 2025) (rejecting similar argument and government's reliance on Mosbacher and Keo); Alvarenga Matute v. Wofford, No. 1:25-CV-01206-KES-SKO (HC), 2025 WL 2817795, at *4 (E.D. Cal. Oct. 3, 2025) (same).

**B. Likelihood of Success on the Merits**

"Likelihood of success on the merits is a threshold inquiry and is the most important factor." Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020) (citing Edge v. City of Everett, 929 F.3d 657, 663 (9th Cir. 2019)).

1. Statutory Framework

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Subsection A is the default detention statute for noncitizens in removal proceedings and applies to noncitizens '[e]xcept as provided in [Subsection C].'"[7] Avilez, 69 F.4th at 529 (alterations in original) (quoting 8 U.S.C. § 1226(a)). "[D]etention under Subsection A is discretionary" and "provides for release on bond or conditional parole." Avilez, 69 F.4th at 529. "When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination," and the noncitizen "will be released if he 'demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.'" Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022) (quoting 8 C.F.R. § 236.1(c)(8)).

"[A]n alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(a)(1)). "Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law." Jennings, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(3)). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." Jennings, 583 U.S. at 287. "Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens." Id. As relevant here, § 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Thus, "[a]ll applicants for admission who are not processed for expedited removal [pursuant to § 1225(b)(1)] are placed in regular removal proceedings under § 1225(b)(2)(A). That process generally entails a hearing before an immigration judge pursuant to § 1229a." Innovation Law

---

[7] Subsection C, which is not at issue here, "provides for the detention of 'criminal aliens' and states that '[t]he Attorney General shall take into custody any alien who' is deportable or inadmissible based on a qualifying, enumerated offense." Avilez, 69 F.4th at 530 (alteration in original) (quoting 8 U.S.C. § 1226(c)).

6

Lab v. McAleenan, 924 F.3d 503, 507 (9th Cir. 2019). Although § 1225(b)(2) "mandates detention of aliens throughout the completion of applicable proceedings," they "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" Jennings, 583 U.S. at 302, 288 (quoting 8 U.S.C. § 1182(d)(5)(A)). "Such parole, however, 'shall not be regarded as an admission of the alien,'" and "when the purpose of the parole has been served, 'the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" Id. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

2. Applicability of 8 U.S.C. § 1225(b)(2)(A)

Petitioner argues that he is likely to succeed on his claim that his ongoing detention under 8 U.S.C. § 1225(b)(2) is unlawful because the "text, context, and legislative and statutory history of the Immigration and Nationality Act," in addition to longstanding agency practice, "all demonstrate that 8 U.S.C. § 1226(a) governs [Petitioner's] detention." (ECF No. 2-1 at 5.) Respondent contends that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), relying on Matter of Yajure Hurtado, 29 I & N Dec. 216, 221 (BIA 2025). (ECF No. 11 at 5–7.)

"We start, of course, with the statutory text. Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." BP Am. Prod. Co. v. Burton, 549 U.S. 84, 91 (2006) (citations omitted). Section 1225(b)(2)(A) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

"[F]or section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for

admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" Martinez v. Hyde, No. CV 25-11613-BEM, 2025 WL 2084238, at *2 (D. Mass. July 24, 2025). First, there is nothing in the record before this Court establishing that an examining immigration officer has made these determinations. Second, "the phrase 'seeking admission' is undefined in the statute but necessarily implies some sort of present-tense action." Id. at *6. Thus, while Petitioner "was never 'admitted' to the United States in that he never lawfully entered it (and is therefore treated as an 'applicant for admission' under various provisions of the statute), it does not follow that he continues to be actively 'seeking' such lawful entry at this time," and there is nothing in the record before this Court establishing Petitioner was actively "seeking admission." Lopez Benitez v. Francis, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025).

Additionally, the Court must "bear[] in mind the fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." King v. Burwell, 576 U.S. 473, 492 (2015) (internal quotation mark omitted) (quoting Utility Air Regulatory Group, 573 U.S. 302, 320 (2014)). Courts have found that "section 1225(b)(2) cannot be read to mandate detention of non-citizens already present within the United States, based on certain inadmissibility grounds, as that would nullify a recent amendment to the immigration statutes," the Laken Riley Act. Martinez, 2025 WL 2084238, at *7. See Maldonado v. Olson, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) ("If § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless. The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2)."). "The line historically drawn between these two sections, making sense of their text and the overall statutory scheme, is that section 1225 governs detention of non-citizens 'seeking admission into the country,' whereas section 1226 governs detention of non-citizens 'already in the country.'" Martinez, 2025 WL 2084238, at *8 (citing Jennings, 583 U.S. at 288–89).

///

"District courts around the country have rejected the government's position that section 1225(b)(2) permits it to pursue mandatory detention against noncitizens who have not been lawfully admitted but have been present in the country for years." Valencia Zapata v. Kaiser, No. 25-CV-07492-RFL, 2025 WL 2741654, at *10 (N.D. Cal. Sept. 26, 2025) (citing Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases)). Respondent cites only the Board of Immigration Appeals' recent decision Matter of Yajure Hurtado, 29 I & N Dec. 216, 221 (BIA 2025), to support the government's position. "Because 'agencies have no special competence in resolving statutory ambiguities,' 'the BIA decision is entitled to little deference.'" Pablo Sequen v. Albarran, No. 25-CV-06487-PCP, 2025 WL 2935630, at *9 (N.D. Cal. Oct. 15, 2025) (quoting Salcedo Aceros, 2025 WL 2637503, at *9). The "BIA's interpretation is owed deference only to the extent that 'the validity of its reasoning' and 'its consistency with earlier and later pronouncements' give it 'power to persuade,'" but "the BIA's current position is inconsistent with its earlier pronouncements," including a non-precedential decision wherein "the Board even stated that it was 'unaware of any precedent' that would support the Government's position." Salcedo Aceros, 2025 WL 2637503, at *9 (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944); Martinez, 2025 WL 2084238, at *8). Moreover, Respondent concedes that "the weight of authority holds that mandatory detention under section 1225(b)(2) does not apply to noncitizens who have been residing unlawfully in the United States for years." (ECF No. 11 at 7 n.3)

Based on the foregoing, the Court finds that Petitioner is likely to succeed on the merits of his claim that he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

**C. Irreparable Harm**

In order to establish that preliminary injunctive relief should be granted, Petitioner must "demonstrate that irreparable injury is *likely* in the absence of an injunction." Winter, 555 U.S. at 22. "Deprivation of physical liberty by detention constitutes irreparable harm," Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018), and the Ninth Circuit has recognized "the irreparable harms imposed on anyone subject to immigration detention," such as "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and

9

their families as a result of detention, and the collateral harms to children of detainees whose parents are detained," Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017). Accordingly, the Court finds that Petitioner has demonstrated that irreparable harm is likely in the absence of an injunction.

### D. Balance of Equities and Public Interest

"Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest. These factors merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). "'[T]he public has a strong interest in upholding procedural protections against unlawful detention,' and the Ninth Circuit has recognized that '[t]he costs to the public of immigration detention are "staggering[.],"'" Jorge M. F. v. Wilkinson, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (second alteration in original) (first quoting Ortiz Vargas v. Jennings, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020); then quoting Hernandez, 872 F.3d at 996). Although the government has a strong interest in enforcing immigration laws, the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," Zepeda v. U.S. Immigr. & Nat. Serv., 753 F.2d 719, 727 (9th Cir. 1983), and the government's immigration enforcement interests are not undermined because Petitioner remains in removal proceedings. "[T]he only potential injury that the government faces is a 'short delay' in detaining Petitioner[] if it 'ultimately demonstrates to a neutral decisionmaker' that their detention is necessary to prevent flight or danger to the community." Valencia Zapata, 2025 WL 2741654, at *13 (quoting Salcedo Aceros, 2025 WL 2637503, at *14). Accordingly, the Court finds that the balance of equities and public interest weigh in favor of a preliminary injunction.

### E. Conclusion

Based on the foregoing, the Court finds that Petitioner is likely to succeed on the merits of his claim that he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), irreparable injury is likely in the absence of an injunction, and the balance of equities and public interest weigh in favor of a preliminary injunction.

The Court now turns to the appropriate relief. Petitioner seeks either: immediate release from custody and to enjoin Respondents from re-detaining Petitioner unless he is afforded a pre-deprivation hearing, or an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven days of the Court's preliminary injunction order.

The purpose of a preliminary injunction is to return the parties to the status quo ante litem, which "refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy[.]'" GoTo.com, 202 F.3d at 1210 (quoting Tanner Motor Livery, 316 F.2d at 809). Here, Petitioner was released from custody on a $2,500 bond in August 2012. (ECF No. 1-1 at 26; ECF No. 2-1 at 3–4; ECF No. 11-1 at 2.) On August 22, 2013, an IJ issued an in absentia order of removal. (ECF No. 2-1 at 4; ECF No. 11-1 at 2.) On July 9, 2025, ICE officers apprehended Petitioner, and at that time, Petitioner had no pending applications or motions before the immigration court or USCIS and was subject to the August 22, 2013 final order of removal. (ECF No. 11-1 at 2.) On July 14, 2025, Petitioner was removed from the United States to Guatemala. (ECF No. 11-1 at 2.) On July 23, 2025, the immigration court granted Petitioner's motion to reopen and rescinded his in absentia removal order. (ECF No. 14-1 at 2.) On August 26, 2025, Petitioner was returned to the United States and upon his return, Petitioner was re-detained, purportedly under § 1225(b)(2)(A). (ECF No. 11-1 at 2–3.)

For purposes of the motion for preliminary injunction, Petitioner challenges his current, ongoing detention upon his return from Guatemala. In the motion, Petitioner does not argue that he was unlawfully apprehended on July 9, 2025 pursuant to the August 22, 2013 order of removal. Given that detention under § 1225(b)(2)(A) was improper, "the last uncontested status would be the moment before petitioner was unlawfully detained under that provision"—in the Court's view, that is Petitioner in the United States released on bond given that the in absentia removal order had been vacated. J.A.C.P. v. Wofford, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025). Under these specific circumstances, the Court finds that the appropriate relief is immediate release and a pre-deprivation hearing in the event the government seeks to re-detain Petitioner. Id.

11

**F. Bond**

"Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" Id. (some internal quotation marks omitted) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Johnson, 572 F.3d at 1086 (quoting Jorgensen, 320 F.3d at 919).

The Court finds that no security is required here. See Lepe v. Andrews, No. 1:25-cv-01163-KES-SKO (HC), 2025 WL 2716910, at *10 (E.D. Cal. Sept. 23, 2025) ("The security bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this, and the government has not established a need to impose a security bond.").

**III.**

**ORDER**

Based on the foregoing, the Court HEREBY ORDERS that:

1. Petitioner's motion for temporary restraining order (ECF No. 2) is converted to a motion for preliminary injunction and **GRANTED**.

2. Respondents **SHALL IMMEDIATELY RELEASE** Petitioner Jorge Estuardo Marin under the same conditions of his 2012 order of release. Respondents **SHALL NOT** impose any additional restrictions on Petitioner unless that is determined to be necessary at a later custody hearing.

3. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's

eligibility for bond must be considered.

4. Within **seven (7) days** of the date of this order, the parties SHALL meet and confer and submit a joint statement regarding case management and how they would like to proceed for the remainder of this case.

IT IS SO ORDERED.

Dated:   **November 13, 2025**

STANLEY A. BOONE
United States Magistrate Judge

13